UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 15-Civ-20834-COOKE/TORRES**

SEAFARERS, INC.,

    Plaintiff,

vs.

KING OCEAN SERVICES LIMITED, INC.,
d/b/a KING OCEAN AGENCY, INC.,
KING OCEAN SERVICES DE VENEZUELA,
S.A., KING OCEAN SERVICES LIMITED
(CAYMAN ISLANDS) INC., and
MARTAINER, INC.,

    Defendants.
_____/

**ORDER**

THIS MATTER is before me on Plaintiff Seafarer, Inc.'s Motion to Remand to Circuit Court of the Eleventh Judicial Circuit of Florida in and for Miami-Dade County (the "Motion to Remand"). (ECF No. 12). The Motion to Remand has been fully briefed and is ripe for adjudication. (ECF Nos. 13 and 19). For the reasons stated in this Order, the Motion to Remand is denied, and the Complaint (ECF No. 1) is dismissed without prejudice.

**I.   BACKGROUND**

This case was originally filed in the Circuit Court of the Eleventh Judicial Circuit of Florida in and for Miami-Dade County. Plaintiff Seafarers, Inc. ("Seafarers") is a producer and importer of fish. (Compl. ¶ 2, ECF No. 1-2). Defendants King Ocean Services Limited, Inc., King Ocean Services de Venezuela, S.A., and King Ocean Services Limited (Cayman Islands) Inc. (collectively, "King Ocean") are in the business of serving as common carriers engaged in international shipping, including ocean and domestic inland transportation. (*Id.* at ¶ 3). Defendant Martainer, Inc. is a common carrier engaged in domestic inland transportation. (*Id.* at ¶ 4).

1

On March 18, 2012, Seafarers imported 27,880 pounds of Gold Snapper Fillets (the "Snappers"). (*Id.* at ¶ 8). The Snapper was rejected by the U.S. Food and Drug Administration, so Seafarers hired King Ocean to re-export the Snapper to Bogota, Colombia, including the transportation of the Snapper from Seafarers' warehouse storage to Port Everglades, Florida, the "Port of Loading." (*Id.* at ¶¶ 9, 10). King Ocean engaged Martainer to handle the precarriage transportation from the storage warehouse to the Port of Loading. (*Id.* at ¶ 11). U.S. Customs and Border Protection ("CBP") demanded re-delivery of the Snapper to inspect the shipment before export. (*Id.* at ¶ 12). CBP communicated this requirement to King Ocean and Martainer. (*Id.*). On May 12, 2012, however, King Ocean and Martainer loaded the Snapper onto the shipping vessel Vega Pollux without first re-delivering the Snapper to CBP for inspection. (*Id.* at ¶ 13). King Ocean issued Seafarers a certification that the Snapper arrived in Colombia on May 20, 2012. (*Id.*).

On November 14, 2012, CBP issued liquidated damages in the amount of $50,000 against Seafarers for King Ocean's and Martainers' failure to re-deliver the Snapper to CBP for inspection prior to re-export of the Snapper. (*Id.* at ¶ 14). The instant lawsuit is Plaintiff's attempt to recover the negotiated liquidated damages paid to CBP and attorney's fees incurred in negotiating the liquidated damages amount. (*Id.* at ¶ 15). Plaintiff's claims are for negligence and indemnification.

## II.   LEGAL STANDARDS

"[T]he burden of proving jurisdiction lies with the removing defendant." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). "Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001). "[R]emoval statutes are construed narrowly." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

A claim arising in admiralty is not a claim arising under the "laws of the United States" for purposes of sections 1331 and 1441(b). *Argandona v. Lloyd's Registry of Shipping*, 804 F.Supp. 326, 327 (S.D. Fla. 1992). A maritime claim may not be removed to federal court without an independent basis for jurisdiction. 28 U.S.C. 1441(b); *see J.P. v. Connell*, No. 15-cv-103-FtM-38CM, 2015 WL 1346976, *4 (M.D. Fla. Mar. 26, 2015); *Vincent v.*

*Regions Bank*, Case No. 08-cv-1756-T-23EAJ, 2008 WL 5235114, at *1 (M.D. Fla. Dec. 15, 2008). "A party may remove state law claims to federal court when Congress expressly so provides or when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Eurosistemas, S.A. v. Antillean Marine Shipping, Inc.*, No. 11-21546, 2011 WL 3878357, at *2 (S.D. Fla. Sept. 1, 2011).

### III. DISCUSSION

Defendants removed this action on the basis that this Court has original jurisdiction pursuant to 28 U.S.C. Section 1337, which provides that, "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce…." While Plaintiff only asserted state causes of action – negligence and indemnification – Defendants argue that Plaintiff's claims are governed by the Harter Act, 46 U.S.C. Section 30701 et seq., and/or the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. Section 30701 Note (2007), which preempt state law whenever they are applicable. I agree.

"Though sharply curtailed by the enactment of COGSA, *see* 46 U.S.C. App. § 1311, the Harter Act, 46 U.S.C. App. § 190 et seq., still governs a shipment prior to loading and after discharge, until 'proper delivery' is made to the consignee or its agent." *Jagenberg, Inc. v. Georgia Ports Authority*, 882 F.Supp. 1065, 1070 (S.D.Ga. 1995). "This is so because COGSA, by its terms, only applies from the time goods are loaded onto a vessel to the time they are discharged at a port." *Id.* Parties may contractually extend COGSA to cover the entire time in which the carrier has custody of the cargo, so long as the extension does not trample upon the protections afforded by the Harter Act. *See Id.* at 1070, n.1; *Eurosistemas*, 2011 WL 3878357, at *3.

Under COGSA, a carrier of goods in international commerce must "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." 46 U.S.C. App. § 1303(2). The Harter Act imposes a duty of proper "loading, stowage, custody, care, [and] proper delivery." 46 U.S.C. App. § 190. COGSA governs a carrier's duty from the time of loading to the time of discharge; the Harter Act governs a carrier's duty from the time of discharge to the time of delivery. *Crowley American Transport, Inc. v. Richard Sewing Mach. Co.*, 172 F.3d 781, 785 n.6 (11th Cir. 1999).

Plaintiff argues that remand is warranted because neither the Harter Act nor COGSA apply since its claims do not relate to any damage or loss to the exported goods themselves. I disagree. COGSA applies to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade. 46 U.S.C. App. § 1312. Even when the goods themselves are not damaged or lost, a loss arising from the contract for the carriage of the goods is remediable through COGSA. *See Rossul Corp. v. Zim American Integrated Shipping Services Co., Inc.*, No. 06-Civ-0037(JCF), 2009 WL 3247141, at *2 (S.D.N.Y. Oct. 5, 2009) (COGSA applied to loss suffered when U.S. Customs and Border Control seized and auctioned goods that were shipped without necessary exportation documentation); *Atlantic Overseas Corp. v. Feder*, 452 F. Supp. 347, 350 (S.D.N.Y. 1978) (COGSA applicable to carrier's indemnity claim against shipper for amounts paid by carrier to foreign customs authorities as a result of shipper's failure to accurately report weight of cargo); *Resources Recovery, Inc. v. China Ocean Shipping (Group) Co.*, No. 96-Civ-4409-JSM, 1998 WL 474134, at *2 (S.D.N.Y. July 11, 1998) (COGSA applicable to loss suffered when cargo was forced from transshipment port back to China due to lack of proper customs documents); *Distribuidora Internacional Alimentos, S.A. v. Amcar Forwarding, Inc.*, No. 10-21701, 2011 WL 902093, at *2 (S.D. Fla. March 11, 2011) (COGSA applicable to loss resulting from foreign customs authorities' seizure of goods and detention for several months after carrier issued a bill of lading with incorrect information regarding the amount of merchandise in the shipment).

In this case, the parties expressly agreed that the bill of lading would be governed by COGSA. *See* ECF No. 13-1.[1] Furthermore, the parties agreed that COGSA would apply "before the Goods are loaded on and after they are discharged from the vessel…." (*Id.* at § 3). Therefore, COGSA applies to Plaintiff's allegations that Defendants breached their duties arising from the bill of lading. Remand is therefore improper because COGSA preempts all state law claims. *See Eurosistemas, S.A.*, 2011 WL 3878357, at *2 ("Under COGSA, claims made pursuant to a bill of lading completely preempt state law causes of action and confer jurisdiction to federal district courts; plaintiffs are entitled to a single remedy and all other tort claims are excluded.").

---

[1] This Court may consider the bill of lading in determining whether it has subject matter jurisdiction and whether remand is appropriate. *Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000).

## IV. CONCLUSION

For the reasons stated herein, it is **ORDERED and ADJUDGED** that

1. Plaintiff's Motion to Remand (ECF No. 12) is **DENIED**.

2. Because COGSA preempts Plaintiff's state law claims, Plaintiff's complaint (ECF No. 1) is **DISMISSED** *without prejudice*. Plaintiff shall file its amended complaint within twenty (20) days from the entry of this Order.

3. The **CLERK** is directed to *administratively* **CLOSE** this case.

**DONE and ORDERED** in chambers at Miami, Florida, this 29th day of May 2015.

*[signature]*

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*